**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SUNBELT RESIDENTIAL | ) | |
| ACQUISITIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20CV401 |
| | ) | |
| CROWNE LAKE ASSOCIATES, | ) | |
| LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on (1) Plaintiff's "Motion to Stay Arbitration" (Docket Entry 7) ("Sunbelt's Motion") and (2) "Defendant's Motion to Compel Arbitration and Stay or Dismiss Proceedings or, in the Alternative, Motion to Dismiss (Docket Entry 10) ("Crowne Lake's Motion"). For the following reasons, the Court (1) will deny Sunbelt's Motion and (2) should grant in part Crowne Lake's Motion, to the extent it requests an order staying this action.

**BACKGROUND**

Seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202, Sunbelt Residential Acquisitions, LLC ("Sunbelt") initiated this lawsuit against Crowne Lake Associates, Limited Partnership ("Crowne Lake"). (See Docket Entry 1 (the "Complaint").) As the basis for this Court's subject-matter jurisdiction, the Complaint alleges that complete diversity exists

between the parties. (See id., ¶ 5; see also id., ¶ 3-4 (averring "upon information and belief" that none of Crowne Lake's partners shares citizenship with any of Sunbelt's members).)

The Complaint describes "an Agreement for Purchase and Sale of Crowne at James Landing Apartments, Jamestown, North Carolina (the 'Agreement')," by which Sunbelt arranged to purchase an apartment complex from Crowne Lake. (Id., ¶ 13.) Under the Agreement, Sunbelt allegedly paid a total deposit of $2,100,000, lodged with an escrow agent pending completion of the purchase. (See id., ¶¶ 14-16.) Thereafter, per the Complaint, a "dramatic increase in tenant delinquencies" (id., ¶ 22) led Sunbelt to write Crowne Lake to terminate the Agreement and to "assert[ Sunbelt's] right to return of the [deposit]" (id.). The Complaint alleges that Crowne Lake "disput[ed Sunbelt's] right to return of the [funds]." (Id., ¶ 23.) As a result, the Complaint explains, the escrow agent, in accordance with the Agreement, will retain the funds "pending the outcome of the dispute described in this action." (Id., ¶ 25.)

According to the Complaint, "[Sunbelt] timely and properly terminated the Agreement in accordance with the [its] terms" (id., ¶ 27) and "timely demand[ed] that the [deposit] be repaid to [Sunbelt] in full" (id., ¶ 28). However, the Complaint maintains, "[Crowne Lake] denies that [Sunbelt] is entitled to repayment of the [deposit] and has prevented repayment . . . to [Sunbelt] while asserting [its] own entitlement to the full balance[.]" (Id.,

2

¶ 29.)  The Complaint alleges that "[the parties] have an actual controversy that requires adjudication, namely as to the parties' respective rights in the . . . deposit following [Sunbelt's] termination of the Agreement."  (Id., ¶ 30.)  Accordingly, Sunbelt seeks "a declaratory judgment finding that [Sunbelt] is legally entitled to return of the entirety of the [deposit], along with any interest accrued."  (Id., ¶ 31.)

In addition, Sunbelt requests a stay of the arbitration proceedings that Crowne Lake initiated in Alabama regarding the dispute over the deposit's return.  (See Docket Entry 7 at 2; Docket Entry 7-1 at 1; Docket Entry 8 at 1–2.)  For its part, Crowne Lake seeks an order either (1) compelling arbitration and staying or dismissing this action or (2) dismissing this action pursuant to Federal Rule of Civil Procedure 12(b)(3).  (See Docket Entry 10 at 1.)  As relevant to Sunbelt's Motion and Crowne Lake's Motion, the record[1] reflects the following:

Sunbelt and Crowne Lake signed the Agreement on January 2, 2020.  (See Docket Entry 7-2 at 1, 27.)  The parties chose North Carolina law to govern the Agreement.  (See id. at 20 ("This Agreement shall be governed by, construed and enforced in

---

    1 As explained below, the Court may look beyond the pleadings because the standard applicable to motions to compel arbitration "is akin to the burden on summary judgment."  Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015).

accordance with the laws in force in the State of North Carolina, without regard to the conflicts of laws doctrine of such state.").)

The Agreement contemplates a due diligence period lasting from January 7, 2020, until February 6, 2020, with a closing date of March 9, 2020. (See id. at 4–5, 12.) During the due diligence period, Crowne Lake promised to provide, among other things, "[a] current rent roll of the Property, schedule of rental rates, and current specials and promotions." (Id. at 6.) Crowne Lake supplied a rent roll numerous times at Sunbelt's request in the months leading up to closing. (See Docket Entry 11-5, ¶¶ 37–51.) By a written modification to the Agreement, Sunbelt postponed closing until May 8, 2020. (Docket Entry 11, ¶¶ 12–13.)

The Agreement characterizes Sunbelt's deposit as non-refundable (except (1) under certain "Refund Conditions" not relevant here or (2) prior to the expiration of the due diligence period) and explains that the deposit would apply toward the purchase price at closing. (See Docket Entry 7-2 at 2–5.) Additionally, the Agreement provides that, if "[Sunbelt] fail[ed] to close in accordance with the terms of [the] Agreement, and [Crowne Lake] [was] not otherwise in default . . ., the Deposit [would] be paid to [Crowne Lake] as liquidated damages and [Crowne Lake would] waive any and all other damages related to [Sunbelt's] breach hereof or failure to close in accordance with the terms of [the] Agreement." (Id. at 10.)

4

In Section 24, entitled "Resolution of Disputes by Arbitration," the parties agreed that "[a]ny controversy or claim arising out of or relating to this Agreement (a 'Dispute') shall be resolved solely by binding arbitration[.]" (Id. at 22.) Section 24 further describes how and by when to commence arbitration and outlines the applicable rules. (Id. at 22–23.) In particular, the parties agreed that arbitration would occur "in accordance with this Section 24, as supplemented by the Commercial Arbitration Rules of the American Arbitration Association ['AAA Rules'], to the extent that such rules do not conflict with this Section 24." (Id. at 22.) Moreover, the parties selected as the site for arbitration "the regional office of the [American Arbitration Association ('AAA')] located in Birmingham, Alabama." (Id.)

In the event of a dispute concerning the deposit, the Agreement authorizes the escrow agent to "interplead all parties and deposit the [funds] with a court of competent jurisdiction." (Id. at 3.) The Agreement also provides that the "Escrow Agent shall retain the Deposit . . . until ordered by the Arbitrator's approval of a Final Proposal as provided for in Section 24 or a final court order, decree or judgment, which is not subject to appeal, to deliver the Deposit to a particular party." (Id. at 2.)

On April 15, 2020, Sunbelt sent Crowne Lake a letter terminating the Agreement. (See Docket Entry 7-4 at 1.) The letter explains that, on April 14, 2020, Sunbelt received from

Crowne Lake an updated rent roll showing a higher percentage of unpaid rent than the initial rent roll; according to the letter, tenant delinquencies increased by a factor of 35 between January and April. (See id.) As a result, Sunbelt expressed its intent to terminate the Agreement and further demanded the return of the $2,100,000 deposit. (Id.)

**DISCUSSION**

## I. Arbitration

## A. Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, renders enforceable written arbitration contracts, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983); see also Patten Grading & Paving, Inc. v. Skanska U.S. Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) ("To further facilitate arbitration, the FAA authorizes a party to an arbitration agreement to demand a stay of proceedings in order to pursue arbitration, 'provided the applicant for the stay is not in default' of that right."). Entitlement to a Section 3 stay depends on the validity,

6

enforceability, and scope of the arbitration clause. See Wilkerson v. Nelson, 395 F. Supp. 2d 281, 285–86 (M.D.N.C. 2005).[2]

Similarly, a party seeking to compel arbitration under Section 4 must establish: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the other party] to arbitrate the dispute." American Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation marks omitted). If the party requesting arbitration establishes these four factors, "the party opposing arbitration must come forward with evidence sufficient to place the entitlement to arbitration in dispute." Scales v. SSC Winston-Salem Operating, Co., No. 1:17cv539, 2017 WL 4467278, at *2 (M.D.N.C. Oct. 5, 2017) (citing Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015), and Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995)). "This standard is akin to the burden on summary judgment." Chorley, 807 F.3d at 564. "Accordingly, the [C]ourt may consider materials outside the pleadings" in resolving a motion to compel

---

2    The dispute here relates only to the scope of the arbitration provision.

arbitration.  CIP Constr. Co. v. Western Sur. Co., No. 1:18cv58,
2018 WL 3520832, at *4 (M.D.N.C. July 20, 2018).

"To determine whether the parties agreed to arbitrate a
particular dispute, the [C]ourt must consider relevant state law
principles governing contract formation.  In a case premised upon
diversity jurisdiction, a federal court applies the law of the
forum state."  Id. at *5 (citations omitted).  As earlier noted,
the Agreement here contains a choice-of-law provision selecting
North Carolina law,[3] and no party contests that North Carolina law
governs this dispute.  Turning to the substance of that governing
law:

> In determining if an agreement to arbitrate exists,
> North Carolina law instructs "the [C]ourt to examine the
> language of the contract itself for indications of the
> parties' intent . . . ." State v. Philip Morris, USA,
> Inc., 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005).  The
> parties' intent is determined in light of the "contract
> as a whole." Id.  The court must give the contract's
> language its ordinary meaning and presume that the
> parties intended the plain meaning of the words, absent
> evidence to the contrary. Anderson v. Anderson, 145 N.C.
> App. 453, 458, 550 S.E.2d 266, 269-70 (2001) (citations
> omitted).  Further, the court must interpret all terms of
> the agreement harmoniously and consistently with each
> other, unless it would be unreasonable to do so.

CIP Constr., 2018 WL 3520832, at *5 (ellipsis in original).

As a preliminary matter, "[a] motion to stay arbitration
presents the mirror image of [a motion to compel arbitration and]

---

3  North Carolina generally honors contractual choice-of-law
provisions.  See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip.
Co., Inc., 386 F.3d 581, 600-01 (4th Cir. 2004).

'. . . effectively raises the [same] issue [of] whether there was a meeting of the minds on the agreement to arbitrate.'" <u>W&T Travel Servs., LLC v. Priority One Servs.</u>, 69 F. Supp. 3d 158, 163–64 (D.D.C. 2014). For this reason, the Court "may . . . address[ such motions] together as cross-motions for summary judgment." <u>Id.</u>; <u>but see DECO, Inc. v. United Gov't Sec. Officers of Am. Int'l Union</u>, No. 2:04cv735, 2005 WL 2298166, at *5 (E.D. Va. Sept. 21, 2005) ("In determining whether to issue a motion to stay arbitration, the traditional standard employed is the same test used for preliminary injunction[s].").[4]

**B. Relevant Issues**

The Supreme Court has identified three types of disagreement that may arise in a contract dispute when parties have signed an agreement containing an arbitration clause. <u>See First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 942 (1995). The first type involves the merits (i.e., the underlying dispute). <u>See id.</u> The second type concerns the arbitrability of the dispute, namely "whether [the parties] agreed to arbitrate the merits." <u>Id.</u> The third type relates to "who should have the primary power to decide [arbitrability]," the Court or an arbitrator. <u>Id.</u>

---

4 Application of the preliminary injunction standard would yield the same result, as the first prong of that standard evaluates the likelihood of success on the merits of Sunbelt's challenge to arbitration. <u>See</u> <u>Winter v. NRDC, Inc.</u>, 555 U.S. 7, 20 (2008).

Here, Sunbelt and Crowne Lake disagree on each score. First, on the merits, they challenge each other's entitlement to the $2,100,000 deposit. (<u>See</u> Docket Entry 1, ¶ 30; Docket Entry 11, ¶ 18.) Second, although they agree that a valid agreement to arbitrate exists, Sunbelt and Crowne Lake dispute whether they agreed to arbitrate entitlement to the deposit. (<u>See</u> Docket Entry 8 at 20; Docket Entry 12 at 12.) Third, Sunbelt and Crowne Lake diverge on whether the Court or an arbitrator should decide the second question, the arbitrability of the dispute. (<u>See</u> Docket Entry 8 at 12–13; Docket Entry 12 at 17–19.)

"[I]n deciding whether the parties have agreed to submit a particular [dispute] to arbitration, a court is not to rule on the potential merits of the underlying claims." <u>AT&T Techs. v. Communications Workers of Am.</u>, 475 U.S. 643, 649 (1986). Accordingly, the Court at this stage may not settle the underlying contract dispute or decide whether Sunbelt terminated the Agreement in such a manner as to entitle it to return of the deposit; instead, the Court may resolve, at most, the following two issues: (1) "who decides whether a particular dispute is arbitrable: the arbitrator or the [C]ourt," <u>Peabody Holding Co. v. UMW</u>, 665 F.3d 96, 101 (4th Cir. 2012), and (2) only if the latter, "whether [the parties] agreed to arbitrate the merits," <u>First Options</u>, 514 U.S. at 942, i.e. entitlement to the deposit.

## C. Relevant Presumptions

"[T]he FAA represents 'a liberal federal policy favoring arbitration agreements.'" O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273 (4th Cir. 1997) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24). "Generally, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Carson v. Giant Food, Inc., 175 F.3d 325, 329 (4th Cir. 1999) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25). Nonetheless, "the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement.'" First Options, 514 U.S. at 944-45 (emphasis in original).

With respect to the "whether" question, the ordinary presumption favoring arbitration applies, and the Court should deem a dispute arbitrable "unless the parties have clearly indicated otherwise." Peabody Holding Co., 665 F.3d at 104. In other words, to deny arbitration, the Court must conclude "that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960); see also id. at 583 ("Doubts should be resolved in favor of coverage.").

11

In considering the "who" question, courts require "'clear and unmistakable' evidence" that the parties delegated the question of arbitrability to an arbitrator. First Options, 514 U.S. at 944–45 (quoting AT&T Techs., 475 U.S. at 649) (brackets omitted). Absent such evidence, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability." Id. at 944. Stated differently, the presumption favoring arbitration "runs the other way" with respect to whether the parties "intend[ed] to commit the very issue of the scope of arbitrability itself to arbitration." Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir. 1993).

### D. Analysis of the Arbitration Provision

In Section 24, under a sub-section entitled "Rights and Remedies," the Agreement states:

> Any controversy or claim arising out of or relating to this Agreement (a "Dispute") shall be resolved solely by binding arbitration through the submission of claims ("Claims") to a single individual (the "Arbitrator") and selection of final proposals submitted by the parties ("Final Proposals") by such Arbitrator in accordance with this Section 24, as supplemented by the [AAA Rules] . . . , to the extent that such rules do not conflict with this Section 24.

(Docket Entry 7-2 at 22 (emphasis added).) Notably, Rule 7(a) of the AAA Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the

12

arbitration agreement or to the arbitrability of any claim or counterclaim." (Docket Entry 12-2 at 4.)

Per Sunbelt, the Agreement fails to evince the parties' intent to delegate the question of arbitrability to an arbitrator. (Docket Entry 8 at 12-13 ("The arbitration provision in the . . . Agreement provides only a broad command to arbitrate matters arising under or relating to the Agreement. It does not provide a clear and unmistakable provision committing the very question of arbitrability to an arbitrator . . . ." (internal citation omitted)).) Sunbelt maintains that Section 24 does not incorporate by reference the AAA Rules; alternatively, Sunbelt contends that any incorporation pertains only to procedural issues. (Docket Entry 15 at 4-14.) Conversely, Crowne Lake insists that the Agreement fully incorporates the AAA Rules, including Rule 7(a), thereby indicating that the parties agreed to arbitrate arbitrability. (Docket Entry 14 at 10-13.)

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options, 514 U.S. at 944. Parties may "agree to submit the arbitrability question itself to arbitration" just as they may empower an arbitrator to decide the merits. Id. at 943. But, the "agreement 'must . . . "clearly and unmistakably" provide that the arbitrator shall determine what

13

disputes the parties agreed to arbitrate.'" Peabody Holding Co., 665 F.3d at 102 (quoting Carson, 175 F.3d at 329). "The 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." Id. For instance, the United States Court of Appeals for the Fourth Circuit once provided the following hypothetical example of a sufficiently clear provision: "all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration." Virginia Carolina Tools, 984 F.2d at 117.

The requisite intent, however, may exist without such a clause. For example, the Fourth Circuit recently held, "in the context of a commercial contract between sophisticated parties, the explicit incorporation of [Judicial Arbitration & Mediation Services ('JAMS')] Rules serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability." Simply Wireless, Inc. v. T-Mobile US, Inc., 877 F.3d 522, 528 (4th Cir. 2017), abrogated in part on other grounds by Henry Schein, Inc. v. Archer & White Sales, Inc., U.S. , 139 S. Ct. 524, 528–29 (2019) (rejecting "wholly groundless" exception, which "enable[d] courts to block frivolous attempts to transfer disputes from the court system to arbitration" even when parties delegated

14

question of arbitrability).[5] The arbitration clause in <u>Simply Wireless</u> provided that "[t]he arbitration shall be administered pursuant to the JAMS Comprehensive Rules and Procedures then in effect." <u>Id.</u> at 525. Under JAMS Rule 11(b), arbitrators possess "the authority to determine jurisdiction and arbitrability issues as a preliminary matter." <u>Id.</u> at 527. In concluding that the agreement evinced the requisite clarity, the Fourth Circuit noted that other Courts of Appeals have viewed "incorporation of arbitral rules substantively identical to those found in JAMS Rule 11(b)" as "clear and unmistakable evidence of the parties' intent to arbitrate arbitrability." <u>Id.</u> at 527–28 (citing cases involving incorporation of AAA Rules, UNCITRAL Arbitration Rules, and the International Chamber of Commerce's Rules of Arbitration).

Following <u>Simply Wireless</u>, courts in this Circuit have applied that incorporation principle to arbitral rules other than JAMS. <u>See, e.g.</u>, <u>A Grade Above Others, LLC v. BCVP2 Baileys Run, LLC</u>, No. 20-cv-01727, 2020 WL 4501512, at *3 (D.S.C. Aug. 5, 2020) (AAA's Construction Industry Arbitration Rules); <u>Choice Hotels Int'l, Inc. v. TK Hospitality Grp., LLC</u>, Civ. Action No. 18-3364, 2019 WL 6324523, at *3 (D. Md. Nov. 26, 2019) (AAA Rules); <u>GlobalOne Mgmt. Grp. Ltd. v. Tempus Applied Sols., LLC</u>, No. 4:18cv59, 2018 WL

_____

5 Therefore, Sunbelt errs in arguing that the Fourth Circuit has not yet "addressed" whether "substantive arbitrability questions could be delegated to an arbitrator by reference to external arbitration rules" (Docket Entry 15 at 13).

6440890, at *6 (E.D. Va. Dec. 7, 2018) (ICC Rules); <u>Collins v.</u>
<u>Discover Fin. Servs.</u>, Civ. Action No. 17-03011, 2018 WL 6434503, at
*2-3 (D. Md. Dec. 7, 2018) (AAA and JAMS Rules).  As particularly
relevant here, courts have found the necessary incorporation where
agreements provided for arbitration "in accordance with" arbitral
rules.  <u>See, e.g.</u>, <u>Brenco Enters. v. Bitesquad.com, LLC</u>, 297 F.
Supp. 3d 608, 610 (E.D. Va. 2018) (finding necessary intent where
agreement stated that "disputes arising under this Agreement
. . . or any alleged breach hereof . . . shall be submitted to
binding arbitration in accordance with the [AAA Rules] then in
effect"); <u>Collins</u>, 2018 WL 6434503, at *3 (finding intent given
provision that "arbitration shall be conducted [by either AAA or
JAMS] in accordance with their procedures in effect when the claim
is filed"); <u>see also</u> <u>Systems Rsch. & Applications Corp. v. Rohde &</u>
<u>Schwarz Fed. Sys.</u>, 840 F. Supp. 2d 935, 941 (E.D. Va. 2012)
(discerning intent to arbitrate arbitrability where agreement
declared: "Arbitration may be conducted in accordance with the
standard rules of the AAA Commercial Arbitration except Arbitrators
may not make any award not strictly in conformance with this
agreement.").

Here, neither party disputes that the Agreement constitutes "a
commercial contract between sophisticated parties," <u>Simply</u>
<u>Wireless, Inc.</u>, 877 F.3d at 528.  (<u>See</u> Docket Entry 8 at 9-13;
Docket Entry 12 at 17-19.)  Section 24 provides, <u>inter alia</u>:

Any controversy or claim arising out of or relating to this Agreement (a "Dispute") shall be resolved solely by binding arbitration through the submission of claims ("Claims") to a single individual (the "Arbitrator") and selection of final proposals submitted by the parties ("Final Proposals") by such Arbitrator <u>in accordance with</u> this Section 24, as supplemented by the [AAA Rules], to the extent that such rules do not conflict with this Section 24. Each party agrees to sign all documents and to do all other things reasonably necessary to submit any such controversy or claim to arbitration and further agrees to, and hereby does, waive any and all rights they or either of them may at any time have to revoke their agreement hereunder to submit to arbitration and to abide by the decision rendered thereunder which shall be binding and conclusive on the parties and shall constitute an "award" by the Arbitrator within the meaning of the [AAA's] rules and applicable law. Notwithstanding the foregoing, in no event shall this Section 24 modify the liquidated damages limitation set forth in Section 7 above. The time periods set forth in this Section 24 are of the essence. If any party fails to appear at a duly scheduled and noticed hearing, the Arbitrator is hereby expressly authorized (but not directed) to enter judgment for the appearing party.

(Docket Entry 7-2 at 22 (emphasis added).)

As discussed above, AAA Rule 7(a) empowers an arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Docket Entry 12-2 at 4.) Despite covering such issues as "Commencement of Proceedings," "Discovery Procedures," "Statement of Claims," "Resolution of Claims," and "Award of Costs," the remainder of Section 24 imposes no limitations on the arbitrator's consideration of arbitrability. (<u>See</u> Docket Entry 7-2 at 22–23.) Given that <u>Simply Wireless</u> involved similar language incorporating

17

materially indistinguishable arbitral rules, that authoritative precedent forecloses Sunbelt's attempt to limit the Agreement's incorporation to "procedural" issues (see Docket Entry 15 at 4–14). Simply put, the Agreement's "explicit incorporation of [AAA] Rules serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability." Simply Wireless, Inc., 877 F.3d at 528.

As such, an arbitrator, not the Court, must decide arbitrability in the first instance. The undersigned United States Magistrate Judge therefore declines to consider the parties' remaining arbitrability arguments and denies Sunbelt's request to stay arbitration proceedings.

### E. Scope of Relief

Turning to Crowne Lake's Motion, Crowne Lake initially asked the Court to (1) compel arbitration and stay or dismiss the instant action or, alternatively, (2) dismiss the action pursuant to Rule 12(b)(3). (See Docket Entry 12 at 15–16.) In response, Sunbelt argues that the Court lacks authority to compel arbitration either outside the Middle District of North Carolina or in a place other than where the parties agreed, namely "the regional office of the [AAA] located in Birmingham, Alabama" (Docket Entry 7-2 at 22). (See Docket Entry 16 at 11–18.) According to Sunbelt, however, "[n]o regional office of the [AAA] exists in Birmingham, Alabama." (Id. at 17.) For these reasons, Sunbelt maintains that Crowne

18

Lake's Motion seeks the impossible. (See id. at 17, 20.) Crowne Lake responds that the non-existence of an AAA regional office in Birmingham presents a mere logistical concern that does not invalidate the Agreement. (See Docket Entry 19 at 7–10.) In its reply memorandum, Crowne Lake modifies its request for relief to include staying this action even "if this Court finds it cannot compel arbitration to occur in Birmingham." (Id. at 6.)

As explained above, "Sections 3 and 4 [of the FAA] . . . 'provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.'" Chorley Enters., 807 F.3d at 563 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 22).

### 1. Section 4

Under Section 4, when the Court determines that arbitration should occur, the Court must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). Section 4 further dictates that "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." Id. Those two mandates, read together, "can create a perplexing dilemma: a district court might not be able to order arbitration strictly in accordance with the terms of the agreement, as one portion of Section 4 seems to

19

require, without contravening a second portion of Section 4." Econo-Car Int'l v. Antilles Car Rentals, 499 F.2d 1391, 1394 (3d Cir. 1974). This dilemma presents itself when, as here, a party to an arbitration agreement seeks relief in a district other than where the parties agreed to arbitrate.

Courts have differed in their approaches to harmonizing the two portions of Section 4. As to the first portion, the Fourth Circuit has determined that "a district court deciding a motion to compel arbitration [under the FAA] shall defer to the terms of the parties' agreement." Elox Corp. v. Colt Indus., No. 90-2456, 952 F.2d 395 (table), 1991 WL 263127, at *1 (4th Cir. Dec. 16, 1991) (unpublished). The Seventh Circuit likewise has held that a district court cannot compel arbitration in its own district when a valid and enforceable agreement to arbitrate elsewhere exists. See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Lauer, 49 F.3d 323, 328 (7th Cir. 1995) ("[Section] 4 . . . preclude[s] the court from ordering arbitration to take place within its district in contravention of a freely negotiated forum selection clause.").[6] However, the Ninth Circuit has taken a different approach, holding

---

    6   Courts in the Tenth Circuit have adopted the Seventh Circuit's view but note that this portion of Section 4 amounts to a waivable venue provision. See 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1052–55 (10th Cir. 2006). This Court (per then-Chief United States District Judge James A. Beaty, Jr.) previously described Section 4 as a "venue provision" without addressing whether it remains subject to waiver. See Jefferson Pilot Life Ins. Co. v. Griffin, No. 1:07CV96, 2008 WL 2485598, at *4 (M.D.N.C. June 16, 2008).

that, at least under certain circumstances, "the [FAA] does not require venue in the contractually-designated arbitration locale." Textile Unlimited v. A..BMH & Co., 240 F.3d 781, 783 (9th Cir. 2001).

As concerns the second portion of Section 4, some courts have concluded that, at least when a plaintiff seeks to compel arbitration, "the arbitration must be held in the same district as the court." Elox Corp., 1991 WL 263127, at *1 (citing 9 U.S.C. § 4 and National Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 330 (5th Cir.)); see also Econo-Car Int'l, 499 F.2d at 1394. Many other courts have applied that interpretation of Section 4, even when a defendant (who never chose the forum) moves to compel arbitration. See, e.g., Ansari v. Qwest Communs. Corp., 414 F.3d 1214, 1220–21 (10th Cir. 2005); Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1018 (6th Cir. 2003); Merrill Lynch, 49 F.3d at 327–28; Jones v. Sea Tow Servs., 30 F.3d 360, 365 (2d Cir. 1994); Newman v. First Atl. Res. Corp., 170 F. Supp. 2d 585, 593 (M.D.N.C. 2001) ("This court cannot compel arbitration in another district.").

In contrast with those latter authorities, the Fifth Circuit has held that "where the party seeking to avoid arbitration brings a suit for injunctive relief in a district other than that in which arbitration is to take place under the contract, the party seeking arbitration may assert its Section 4 right to have the arbitration

21

agreement performed in accordance with the terms of the agreement." Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co., 524 F.2d 1275, 1278 (5th Cir. 1975) (emphasis added). In so holding, the Fifth Circuit cautioned that, "if [the] Section 4 right to order arbitration were considered a compulsory counterclaim, then failure to assert that claim in the [court where the party opposing arbitration filed suit] might have precluded raising [that Section 4 right] in a subsequent suit in [the proper court]." Id. at 1277.

The Fifth Circuit's approach accords with the Seventh Circuit's later observation that, per the legislative history, "[Section 4] was intended to require a party seeking to compel arbitration to apply to the proper court." Merrill Lynch, 49 F.3d at 329 (emphasis added). In the view of some courts, "[t]o extend such requirement to motions to compel filed by defendants, who have been brought into court in contravention of the arbitration agreement, would create a quagmire for courts, penalize the parties attempting to enforce arbitration, and unnecessarily frustrate the purpose of the [FAA]." Moody v. PNE Media Holdings, LLC, No. 1:02cv24, 2002 WL 824637, at *6 (W.D.N.C. Apr. 25, 2002) (emphasis added). However, other courts have rejected such an interpretation as incompatible with the plain language of Section 4. See Southern Concrete Prods., Inc. v. ARCO Design/Build, Inc., No. 1:11cv194, 2012 WL 1067906, at *8 (W.D.N.C. Mar. 29, 2012) ("The Court . . . adopts the majority view that a district court lacks authority

22

under [Section] 4 of the FAA to compel arbitration outside of its geographic jurisdiction."); accord American Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., 628 F. Supp. 2d 674, 682-83 (E.D. Va. 2009).

Crown Lake urges the Court to follow Dupuy-Busching. (See Docket Entry 12 at 15 n.3.) However, given the plain language of Section 4, which does not distinguish between motions to compel brought by plaintiffs and those brought by defendants, the Court should reject Crown Lake's urging and join the Southern Concrete and American Int'l courts in holding Section 4's venue limitations equally applicable to all litigants.[7] Because the Agreement selects Alabama as the proper arbitral forum, the Court should reject Crowne Lake's request to compel arbitration.[8]

2. Section 3

In contrast with Section 4 of the FAA, "a Section 3 order does not concern itself with the place of arbitration. Rather the court merely enters an order staying [judicial] proceedings until such arbitration proceedings are completed." Forshaw Indus. v. Insurco,

---

[7] It bears noting that a Section 3 motion to stay remains available to defendants sued in districts other than the parties' selected arbitral forum. See Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1009, 1018 (6th Cir. 2003) (affirming refusal to compel out-of-district arbitration but remanding with instructions to stay case pending arbitration).

[8] Given this resolution, the Court need not address Sunbelt's contention that "AAA arbitration cannot be compelled in the non-existent Birmingham forum." (Docket Entry 16 at 19.)

Ltd., 2 F. Supp. 3d 772, 788–89 (W.D.N.C. 2014). Moreover, the Court must stay judicial proceedings after concluding that "that the issue involved in such suit or proceeding is referable to arbitration under [a written arbitration] agreement." 9 U.S.C. § 3; see also Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) ("This stay-of-litigation provision is mandatory."). Even "where a federal court lacks authority pursuant to 9 U.S.C. [Section] 4 to compel arbitration outside its district, the court may still determine that the dispute nonetheless remains 'referable to arbitration' elsewhere, if a forum is designated, and must then order a stay pursuant to Section 3 instead, thereby leaving the parties free to pursue their contractual rights and remedies in the appropriate venue." Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (quoting 9 U.S.C. § 3) (brackets omitted); see also, e.g., American Heart Disease Prevention Found. v. Hughey, No. 96–1199, 106 F.3d 389 (table), 1997 WL 42714, at *5 (4th Cir. Feb. 4, 1997) (unpublished) (noting that federal court in Virginia, "[a]s a proper and convenient forum," could grant Section 3 stay despite agreement to arbitrate in New Jersey); Southern Concrete Prods., 2012 WL 1067906, at *8 (issuing Section 3 stay of declaratory-judgment action brought by party seeking to avoid arbitration in St. Louis, Missouri).

Here, because the parties agreed to arbitrate arbitrability, the issues in this action remain "referable to arbitration." 9

24

U.S.C. § 3. The Court should therefore grant Crowne Lake's request for a stay of this action.

## II. Rule 12(b)(3) Dismissal

As an alternative to compelling arbitration, Crowne Lake has asked the Court to dismiss the judicial proceeding for improper venue pursuant to Rule 12(b)(3). (See Docket Entry 12 at 16–17.) In opposition, Sunbelt has asserted that "dismiss[ing] the action on account of venue would presume the validity of the disputed [arbitration clause]." (Docket Entry 16 at 19 (emphasis omitted) (citing <u>DTC Health, Inc. v. Global Healing Ctr., Inc.</u>, No. 5:06-CV-34, 2006 WL 8438700, at *3 (E.D.N.C. Mar. 23, 2006)).)[9]

The Court should not delve into Crowne Lake's Rule 12(b)(3) argument because it suffers from a fatal defect. The Fourth Circuit once advised that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." <u>Sucampo Pharms., Inc. v. Astellas Pharma, Inc.</u>, 471 F.3d 544, 550

_____

9    Sunbelt's response misses the mark, as Sunbelt never actually disputes the <u>validity</u> of the arbitration clause or the <u>formation</u> of the Agreement. <u>See</u> <u>National Fed'n of the Blind v. Container Store, Inc.</u>, 904 F.3d 70, 80–81 (1st Cir. 2018) (providing examples of validity and formation challenges and distinguishing them from one another). Instead, Sunbelt's arguments go to the <u>scope</u> of the (admittedly valid) agreement to arbitrate. Moreover, unlike here, the dispute in the case cited by Sunbelt related to whether one entity was "the alter ego of [another], the signatory to the arbitration agreement." <u>DTC Health</u>, 2006 WL 8438700, at *2–3. The non-signatory claimed not to be bound by the arbitration clause at all — a formation challenge that Sunbelt never asserts here.

Case 1:20-cv-00401-CCE-LPA   Document 20   Filed 02/11/21   Page 25 of 28

(4th Cir. 2006). This principle seemingly authorized parties to seek dismissal when an arbitration clause rendered the judicial forum improper. See Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 360, 365-366 (4th Cir. 2012). However, the following year, the Supreme Court altered the landscape; specifically, it explained that 28 U.S.C. § 1391 generally governs venue and that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in [Section] 1391(b)." Atlantic Marine Constr. Co. v. United States Dist. Ct., 571 U.S. 49, 55-56 (2013). In other words, a forum-selection clause cannot render improper a venue suitable under Section 1391(b).[10]

The Fourth Circuit since has acknowledged "that a party may not seek to enforce a forum selection clause by moving to dismiss for improper venue; instead, 'the appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens*.'" BAE Sys. Tech. Sol. &

_____

    10  Crowne Lake stops short of challenging venue under this statute. Absent a contrary argument, for present purposes, the Court should assume without deciding that proper venue lies here on the grounds that "a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2), in the Middle District of North Carolina or that "a substantial part of property that is the subject of the action is situated," id., in this District. See Fed. R. Civ. P. 12(h) (noting that litigant may waive defense based on improper venue); see also Fannie Mae v. Epicurean Foods LLC, No. 1:16cv350, 2017 WL 3259293, at *3 (E.D. Va. Jan. 25, 2017) ("[P]roper venue can be waived, and if not asserted promptly by a defendant, a court will presume it waived.").

Case 1:20-cv-00401-CCE-LPA   Document 20   Filed 02/11/21   Page 26 of 28

Servs. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 470 n.4 (4th Cir. 2018) (citing Atlantic Marine, 571 U.S. at 59–61; see also Southern Coal Corp. v. IEG PTY, LTD., No. 2:14cv617, 2016 U.S. Dist. LEXIS 24853, at *5 (E.D. Va. Feb. 26, 2016) ("While the old precedent was to look to whether the forum selection clause was enforceable and then dismiss or transfer if the Court found it was to allow the party to lodge [its] complaint in the proper forum, this precedent is no longer good following the findings of the Supreme Court case Atlantic Marine."). Accordingly, the Court should reject Crowne Lake's alternative dismissal effort because Atlantic Marine forecloses that avenue.

## CONCLUSION

Crowne Lake has established that this "case rais[es] a dispute referable to arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. at 22. In light of the Agreement's incorporation of the AAA Rules, questions of arbitrability properly fall to the arbitrator. However, because the Agreement mandates arbitration in Birmingham, Alabama, the Court should stay this action (as, consistent with the plain language of Section 4, the Court possesses authority to compel arbitration neither in this district nor elsewhere). Finally, the Court should decline to dismiss pursuant to Rule 12(b)(3) because the Agreement's arbitration clause does not render venue improper.

27

**IT IS THEREFORE ORDERED** that Sunbelt's Motion (Docket Entry 7) is **DENIED**.

**IT IS FURTHER RECOMMENDED** that Crowne Lake's Motion (Docket Entry 10) be **GRANTED IN PART and DENIED IN PART** as follows: the Court should stay this action pending arbitration.

This 11th day of February, 2021.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
